## Allen H. Mann v. William Mann et al.

1. *Merger—Conveyance by Mortgagor to Mortgagee—Exception.*—The general presumption of law when the owner of the greater interest in real estate conveys to the holder of the lesser interest, is that the title merges in the grantee; and in case of the grantee holding a mortgage and the grantor of the equity of redemption being a mortgagor, the legal presumption is that the mortgage debt is satisfied by the conveyance, and the grantee paid in full by the execution of the deed; but this presumption has many exceptions, especially where such a merger is detrimental to the holder of the mortgage.

2. *Accounting—Claim for Board, Clothing and Medical Attendance.*—In a suit for foreclosure and a cross-bill by defendants for an accounting of certain expenses, among which was a claim for furnishing necessary board, clothing and medical attendance, it appeared that it was not the intention of the party to charge for such furnishing at the time, and the claim was not allowed.

3. *Accounting—Claim for Taxes and Insurance.*—In an accounting upon a cross-bill in a foreclosure proceeding, it is error to allow an abatement of the amount due on the mortgage by reason of expenses incurred for taxes and insurance, where it was the duty of the party claiming such abatement to pay the taxes, and where he had a right to keep the property insured for his own benefit.

4. *Betterments—Made by Mortgagor.*—In an action to foreclose a mortgage, the defendant filed a cross-bill asking an accounting for betterments made by him upon the land; the claim was not allowed as the mortgage attached to all betterments as soon as made.

Mann v. Mann.

Memorandum.—Foreclosure proceedings. Appeal from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding. Heard in this court at the May term, A. D. 1893. Opinion filed December 12, 1893.

APPELLANT'S BRIEF, JOHN D. SANDFORD, ATTORNEY.

Equity will not prevent a merger, where such prevention would result in carrying a fraud or other conscientious wrong into effect. 15 Am. & Eng. Enc. of Law, 315.

Taking a security of a higher nature, merges or extinguishes the inferior one. 15 Am. & Eng. Enc. of Law, 331.

"Where a deed for land on its face appears to be an unconditional and absolute conveyance, and is acknowledged and delivered, the law will presume, in the absence of proof showing the contrary, that it is what it purports to be, an absolute conveyance." Bently v. O'Bryan, 111 Ill. 53; Sharp v. Smitherman, 85 Ill. 153; Hancock v. Harper, 86 Ill. 445; Eames v. Hardin, 111 Ill. 634; Helm v. Boyd, 124 Ill. 370. "And the burden of proof is on party endeavoring to show the contrary." Knowles v. Knowles, 86 Ill. 1; Moran v. Pellifant, 28 Ill. App. 278; Blake v. Taylor, 32 N. W. Rep. 401.

APPELLEE'S BRIEF, MORRISON & WOOSTER, ATTORNEYS.

When a greater and a lesser estate meet in some person, it does not follow that a merger takes place. That will depend on the interest of the holder of the incumbrance, and if necessary to advance the ends of justice, a court will keep them separate, and when it appears that the deed was made as additional security, merger does not take place. Huebsch v. Scheel, 81 Ill. 281; Edgerton v. Young, 43 Ill. 464; Bank v. Cheeney, 87 Ill. 602; Fowler v. Fay, 62 Ill. 375; Ætna Life Ins. Co. v. Corn, 89 Ill. 170; Campbell v. Carter, 14 Ill. 286; Jarvis v. Frink, 14 Ill. 398; Jordan v. Cheney, 74 Me. 362.

## STATEMENT OF FACTS BY THE COURT.

This was a suit in equity upon the original and cross-bill wherein Elizabeth Harrison, executrix of George Harrison,

deceased, as complainant, and Allen H. Mann, William T. Harrison and William Mann, as defendants, are parties to the original bill, and Allen H. Mann, as complainant, and William Mann and William T. Harrison and Elizabeth Harrison, as defendants, are parties to the cross-bill. The original bill was brought to foreclose certain mortgages owned by the complainant therein, as such executrix, on the southwest quarter of section twenty-nine, township twenty-one north, of range ten east of fourth P. M., executed by the defendants, Allen H. Mann and William T. Harrison, to Thomas J. Hollister and George Harrison respectively. It avers that William Mann also held a mortgage executed by the defendants, Allen H. Mann and William T. Harrison, on the same land, to secure two notes aggregating $2,800, with interest thereon from April 13, 1883; that said mortgages of William Mann are subsequent to the mortgages owned by the complainant in the original bill, and prays that if any surplus remains after paying the said mortgages held by the complainant, that it be applied, so far as it will go, toward paying the said note running to the said William Mann. All the defendants filed answers; William Mann and William T. Harrison admitted the allegations of the bill, and charged that William Mann has often demanded the principal and the interest of the said notes of the makers, but has never been able to get any portion of the same. William Mann also answered and demurred, and by agreement of the parties, it was ordered by the court that Sherwood Dixon be appointed as special master in chancery to take proofs and report his findings thereon. Allen H. Mann obtained leave of the court to file a cross-bill, and the same was filed.

In substance, it claims the surplus of the proceeds of the sale of the land under the decree prayed, rendered in the original bill, which mortgage therein described he admitted to be valid and just. He sets up and charges that on the 19th day of March, 1884, and subsequent to the execution of the said notes and mortgage from him and William T. Harrison, said William Mann bargained for and purchased from the said William T. Harrison, the latter's interest in

the premises covered by the said mortgage, for a consideration of $4,500, and on that date William T. Harrison conveyed to the said William Mann all his interests in the said lands subject to all the incumbrances existing on it. The deed was a quit claim deed made subject to the incumbrances named in the original mortgages. The cross-bill further avers that the deed was given for the purpose of releasing defendant and orator Allen H. Mann from all liabilities on the notes and mortgage given to the said William Mann as aforesaid, and to give William Mann an equal interest with orator in said premises, subject to the Hollister and George Harrison mortgages respectively. The cross-bill then goes on to state the history of the transaction; that William T. Harrison and himself were the original purchasers of the said land and that the first mortgages named were given to secure the purchase money; that himself and William T. Harrison were the purchasers of the land and received a deed for the same for $9,000, each of them paying down $600, and that Allen H. Mann, complainant in the cross-bill, on the 19th day of March, 1884, paid William T. Harrison the sum of $600, and assumed and afterward paid all the interest accrued on the note, and all taxes for the previous year as a part of the consideration of the said premises; that the 19th day of March, 1884, said William Mann lived with and made his home on the premises with orator. That during the time he furnished William Mann board, clothing and necessary medical attendance and care, for which he charges $1,500; also charges William Mann with board, lodging, washing, medical attendance and other necessaries furnished Martha Mann, wife of William Mann, from the 19th day of March, 1884, until her death, the 27th of December, 1885, also with her funeral expenses amounting to $400; claims a bill for tiling on the premises for $500, and a like sum for buildings and fences on the premises; charges that he has paid all the interest on the said notes from the 19th of March, 1884, to the 23d of June, 1891, $330 per annum, amounting to $2,600; paid the taxes on the premises during the same time. He claims also that he has conducted the

farming operations on the place and paid all the expenses; claims that the mortgage ought to be released, and that orator and William Mann be decreed to be equal owners of the premises, subject to the Hollister and Harrison mortgages, or in case the court should be of a different opinion, that an account be taken of the amount due orator of the sums of money so paid by him and for the care and maintenance of William and Martha Mann, and that William Mann decreed to pay orator, and for general relief.

The different defendants in the cross-bill, Elizabeth Harrison, executrix, etc., answer the said cross-bill, denying all the material allegations set out, so far as it relates to the purchase of said land by William Mann for the consideration named in the cross-bill, and the release of the mortgage executed to William Mann; they admit that Allen H. Mann paid, in consideration of the quit-claim deed from William T. Harrison to William Mann, '$600; that William Mann lived with Allen H. Mann until 1891, but deny the furnishing by him the necessary board, clothing and medical attendance, and charge that when Allen H. Mann and William T. Harrison moved on the farm, William Mann and his wife moved on the farm and kept house for them, receiving no pay therefor except board, and the services they rendered were worth more than their board and clothing, and the medical care and attendance to them; and charges that Allen H. Mann has not placed more improvements on the farm than would keep it in good condition and repairs, not exceeding $300; charges that Allen H. Mann, from the time the deed was made to William Mann, has the exclusive use and control and enjoyment of the premises, as well as the rents and profits of the farm; denies that there was ever any agreement made between William Mann and Allen H. Mann, that the said William Mann would release and cancel the notes and mortgage which he held on account of the making of the said deed to him; admits that on the 13th of August, 1892, William Mann commenced suits at law on his said notes against William T. Harrison and Allen H. Mann and intends to prosecute his suit at law; that he never

agreed to cancel the said notes and mortgage, and that he
never intended to release Allen H. Mann and William T.
Harrison from the payment of it; charges the fact to be
that he had no conversation with the said Allen H. Mann
in regard to the making of the deed to him; that he learned
from George Harrison, the father of William T. Harrison,
that the latter was about to sell his interest in the premises,
and that the deed was to be made to him; that George Har-
rison explained to him that the deed would be of but little
use to him, but that he might take it as an additional secu-
rity on the notes that he held, intending and supposing that
he was receiving it as additional security on the indebted-
ness; that he did not intend or agree to cancel or release
the said notes; claims that any surplus arising from the sale
of the lands after satisfying the prior mortgages, be paid to
him on the said indebtedness. To this answer, replication
was filed, and a large amount of evidence was taken before
the master, and the master reported his findings to the court,
and among other things, reported and found that directly
after the purchase of the land, the defendants, William T.
Harrison and Allen H. Mann, took possession of the land
and farmed the same until the time of the making of the
quit-claim deed; that they were unmarried men; that William
Mann and his wife went on the farm with them and kept
house for them, performing necessary household duties, and
William Mann also rendered some assistance in the farming
operations; that after the deed was made, said William
Mann and Allen H. Mann continued to reside on the said
farm until on or about December, 1891, when the said Will-
iam Mann left the farm and has not since resided there;
that the wife of the said William Mann died on the 25th of
December, 1885; that said Allen H. Mann was then married
and that his wife, then, and thereafter, performed the house-
hold duties; said Allen H. Mann carried on the said farm,
and William Mann assisted thereat; that the said Allen H.
Mann, when an infant but a few months old, was left by his
parents with the said William Mann and wife, and was by
them reared and lived with them until about the year 1883,

at which time he was upward of twenty-three years of age; that while the relation of parent and child did not exist between them, yet there was no intention on the part of William Mann and wife, or either of them, or of Allen H. Mann and wife, or either of them, to make any charges for services rendered, one to the other, or for either to pay the other anything for services while they lived together on such farm, and that neither said Allen H. Mann nor William Mann is entitled to pay for any of those services; the said Allen H. Mann, from and after the making of the said deed to the said William Mann, took and received all the products and income derived from the said farm, paid all taxes thereon and for insurance of buildings, and paid for improvements; paid the interest on the Hollister and Harrison mortgages, so far as the same has been paid. And that the said William Mann derived his entire support and that of his wife, during her life, from the products of the said farm during that time until William Mann left the farm; that nothing has been paid on the William Mann notes and mortgage, and that when the said deed was made to the said William Mann by the said William T. Harrison, the only actual consideration paid therefor was the sum of $600, paid by Allen H. Mann; that the $2,800 borrowed from William Mann by William T. Harrison and Allen H. Mann, was used to pay off a $2,500 note given to Hollister at the time of the purchase of the land; that by means of the conveyance from William T. Harrison to William Mann, the title to the premises became invested in William Mann and Allen H. Mann as tenants in common, subject to the mortgages theretofore given; the master finds that equity requires that the mortgage of William Mann should not merge into the title acquired from William T. Harrison, and that William Mann and Allen H. Mann should be regarded as the owners of the title, subject to the first mortgages, in proportion to the money that each had paid on the land—Allen H. Mann to twelve fortieths and William Mann to twenty-eight fortieths, and that Allen H. Mann should be entitled to pay for lasting improvements made on the premises, to wit, to laying

tile drain, building a hog and hen house and fences thereon, and that it is not clearly shown that such expenditures have been in excess of the net income derived from the said premises, after paying taxes, insurance and interest as heretofore stated, and that in order to determine the equitable rights of Allen H. Mann and William Mann respecting the said rents and profits and improvements, an account should be taken on the basis of the twelfth finding, etc. Exceptions were taken to the master's report by both parties, and upon the hearing the court rendered a final decree of foreclosure in favor of Elizabeth Harrison for the amount of her claim and attorney's fees provided for in the mortgages, and found that there was due William Mann from said Allen H. Mann and William T. Harrison, the principal sum of $2,800 and $1,647.43 interest, making a total of $4,442.32, and decreed payment of the said sum of money to the complainant; orders the sale of the property described in the mortgage, and orders the surplus, after paying the first mortgages, to be brought into court and paid on the amount due William Mann, unless the court shall, on the hearing of the cross-bill, order and decree that such surplus shall be otherwise disposed of, and such surplus shall remain in the court until the final distribution of the cross-bill, and in case that the said surplus shall be more than enough, it shall be paid to Allen H. Mann. Upon the hearing of the cross-bill, the court found the same way—that the mortgage to William Mann was a valid and subsisting lien upon the premises for the payment of the said sum due the said William Mann on the said notes, and found that neither Allen H. Mann nor William Mann expected to charge each other for work done, and neither is entitled to an accounting concerning the same, and found that the quit-claim deed from William T. Harrison to William Mann was given as additional security on the note of William Mann, and not in payment of an indebtedness.

OPINION OF THE COURT, LACEY, J.

The above statement gives an idea of the main facts of

the case, and the findings of the master and the court, but
it does not give the substance of the evidence. It was
quite voluminous, and it is somewhat difficult to determine
with precise accuracy what the real intention of Allen H.
Mann, William T. Harrison and William Mann was, in the
transaction of procuring the execution of the quit-claim
deed from William T. Harrison to William Mann; it seems,
however, pretty plain to us, that William Mann had but
very little to say about, or had much to do in the negotia-
tions, further than that he acquiesced in the deed being made
to him and accepting it, but the law generally presumes in
such cases, where the grantor of the greater interest deeds
real estate to the holder of the lesser interest, that the title
merges in the grantee, and in the case of a grantee holding
a mortgage, and the grantor of the equity of redemption
being a mortgagor, the legal presumption is that the mort-
gage debt is satisfied by the conveyance, and the grantee
paid in full by the execution of the deed; but this presump-
tion has many exceptions, and especially in case such a
merger is a detriment to the holder of the mortgage. In
this case, William Mann only received a title from William
T. Harrison for an undivided one-half of the premises, and
it would seem hardly equitable to hold on the facts, without
further proof than the receiving a deed for an undivided
interest from one of the makers of a joint note and mort-
gage, and owners of the equity of redemption, that there
could have been an intention on the part of William Mann
to accept such deed in full satisfaction of such debt, where
his mortgage covered the entire title to the land. We think
that the rule of merger, without further extrinsic proof of
some agreement to that effect, could not be presumed to
have been intended; at least as to the entire title and as to
the entire debt. There is no evidence from any witness
that William Mann agreed with Allen H. Mann to accept
the quit-claim deed in full satisfaction of his entire debt.
We think, however, considering the fact of the acceptance
of the deed, and all other evidence, that it was the inten-
tion to accept William T. Harrison's deed as an absolute

title and not as a mortgage, for he already had a mortgage, and that he intended to release and accept it in satisfaction of one-half of his debt, but not to release Allen H. Mann's half. Why should he release Allen H. Mann's half, when the half interest he was purchasing was not worth his entire claim, and when he could get William T. Harrison's undivided half for less?

There is another question in the case which we have considered with some care, and that is whether Allen H. Mann is entitled to a credit on his note for the $600 which he paid William T. Harrison, in order to induce him to execute the quit-claim deed to William Mann. We are of the opinion that he is not entitled to such credit; it seems that Allen H. Mann and William T. Harrison, up to that time, had been farming the land in partnership, and that they had failed to agree any longer, and George Harrison was threatening to foreclose his mortgage. In order, as we think, to get the full possession of the farm, and to settle matters, he was willing to pay William T. Harrison that amount on his own account, to have the quit-claim deed executed. It appears from the evidence, that William Mann was never consulted as to whether he would allow such payment on his note. He was only asked to accept the deed, which he did; it was no particular benefit to him, so far as the mortgage was concerned, to accept a one-half interest in the deed for one-half of the debt and pay $600 besides, when an undivided half, subject to incumbrances, was not worth more than half his mortgage. We think, therefore, that Allen H. Mann is not entitled to that credit; no credit of the kind was asked to be given or entered on the mortgage at the time, or since. William Mann was an old man at the time, and did not appear fully to realize the nature of such business transactions. We think the finding of the master and the court that no accounting, between William Mann and Allen H. Mann concerning the support furnished William Mann and his wife, and any claim of William Mann for services, need be had, for it was intended that each should be furnished gratis.

The surplus remaining, after paying off the amount of the decree rendered in the original case, should be distributed as follows, to wit:

1st.   William Mann should be paid one-half of his entire note and interest held against the land and secured by his mortgage given by Allen H. Mann and William T. Harrison, according to its terms and without deductions on account of any counter claim of Allen H. Mann, and the court may refer the case to the master to compute the amount due.

The said note is not subject to any off-set on account of the payment of any interest by Allen H. Mann on prior mortgages given by him, for it was his duty as maker of all the notes and mortgages, to pay each when due, and it relieved the land for the benefit of junior mortgagees of so much prior indebtedness and liens.   Nor is he entitled to any abatement by reason of any expenses incurred for betterments, taxes and insurance, for it was his duty to pay the taxes on the land, and he had a right to keep the property insured for his own benefit, and the buildings thereon. An existing mortgage would attach to all betterments as soon as made.

2d.   If any surplus remains after the payment of the last described mortgage and interest, it should be equally divided between Allen H. Mann and William Mann, as tenants in common of the land, each owing an undivided one-half interest; in that case, an account should be stated between them, in regard to such last mentioned surplus, if any exist.   Allen H. Mann should be charged with one-half of the net income received from the premises, while in the occupation of them from the date of the quit-claim deed to William Mann, and credited with one-half of the expenditures for valuable and lasting improvements put on the same by him, while in occupation during the same time. He should also be credited with one-half of the interest paid by him on the Hollister and George Harrison mortgages, after the date of the said quit-claim deed from William T. Harrison to William Mann; and upon such account being stated, the one entitled to the balance should have

such balance deducted from the other's one-half of such last named surplus. In case it becomes necessary, on account of any surplus, to settle the account last above named, the court should refer the case to the master in chancery, or to a special master, if one be appointed to take the evidence, and state the account on the basis above named. And upon the master or special master's report, if such report be correct, the court shall enter a decree accordingly. The court should also dissolve the injunction heretofore granted, prohibiting the prosecution of the common law suit of William Mann v. Allen H. Mann and William T. Harrison, as to one-half of the note and interest sued on, and make it perpetual as to the balance.

The decree of the court below in this, the cross-bill, for the reasons above indicated, is hereby reversed, and the cause remanded to the court to settle the equities of the parties according to the principles indicated in this opinion. Reversed and remanded.